Case, as soon as the lawyers are ready, number 152543. Good morning, Your Honors. Matt Kaplan here for my client, Patricia Villa. Your Honors, in our view, the issue in this case is what is required to establish a violation of a section of Title VII, 42 U.S.C. Section 2008-3. That section bars specific other unlawful employment practices. And specifically, one of the things it bars is taking adverse employment action against an employee because that employee opposed discrimination. Our view is that what we must prove, and I think the atelier agrees that we must prove this, that we must prove that Ms. Villa was fired because she opposed conduct that she reasonably believed was, or was fired because she opposed conduct that she reasonably believed was discriminatory. CAVA, however, says in addition to that, it has an absolute defense to liability if it sincerely believed that my client was telling a lie and making up her report of discrimination, regardless of whether that belief was reasonable or not. In our view, there's no support in the case law for such a broad exemption, for such an empty head, pure heart defense on the part of employers. The practical result of their rule would be that few rational employees, no rational employees, especially if you're talking about discrimination focusing on another person, not on yourself, few rational employees would voluntarily speak up and inform management about that discrimination if they knew that subject to no review whatsoever, it was free to simply decide that they were lying and fire them for lying. On a theoretical sense, you may be correct about that, but here we look at the specific facts of this case and whether or not you met your burden with respect to what you had to prove. As I understand it in this case, you elected to proceed with the direct, indirect, burden resting on you to show causation. So as I understand the record, correct me if this is incorrect, the employer included in its statement of undisputed facts, which you agreed to, the statement that the employer said that Mr. Gresham concluded that Ms. Villa made up the allegations and as a result Mr. Gresham decided to terminate Ms. Villa's employment for fabricating the report against Mr. Boutron. So that's a fact, a stipulated fact, is that right? We do not have evidence, there's no evidence in the record that Cava acted in that faith. I would put it that way. Well, just beyond that, I mean, this is what's in the record. It's a statement that says the employer terminated your client for fabricating the report. That was the basis upon which they acted. If that's the case, how can you prove causation? Well, the causation, Your Honor, is but-for causation. But-for causation is the event at issue caused another event. Here, I think it's clear, if she hadn't spoken up, if she hadn't opposed this alleged sexual harassment, she wouldn't have been fired. So your argument has to be that the two things, the report and the belief that the report was false are one and the same, are irreconcilable together, right? Well, I think what we're arguing is that there are, in this event, the dismissal of Ms. Villa, and in any event, there's always multiple causes for that event. One cause was she opposed discrimination. Another cause was she picked up the telephone and made the phone call at issue. Another cause was that they concluded that she was lying. As I understand CABA's position, their view is that there can only be one but-for cause. And we don't believe that's correct at all. And nothing in Crawford or any other Supreme Court case or cases from this circuit would support that. Let me ask you this. What relevance is the adequacy of the investigation in your view? Our, in our view, our principle argument- The reasonableness of the investigation. I'm sorry, Your Honor? A better question would be, in your view, what relevance does the reasonableness of the investigation conducted by the employer have on your claim? Your Honor, our view is that the issue is whether she was telling the truth or not telling the truth. If, as a factual matter, she was telling, this is our principle argument, as a factual matter, she was telling the truth, the company is liable. Essentially, the company disbelieves that at her own- Whether it does an investigation or not. Right. That's our principle argument. We recognize, I mean, the Court may not be eager to accept that and we make the alternative argument that the standard should be, did the company conduct a reasonable investigation? And in our view, a jury, if that's the question, a jury could readily conclude that this was not a reasonable investigation. As I understand what Kava is arguing, is that it doesn't matter how totally unreasonable the investigation was, what matters is in their heart, they believed that she was lying and there's no appeal to that. And one of- If that was what they believed, where is the discriminatory animus? You know, we quoted a case from the D.C. Circuit which says that animus, and this is what we very strongly believe, that animus in the sense of scienter, of evil motive, is not necessary. I mean, the statute says you cannot be dismissed or you cannot have an adverse employment action taken against you because you opposed discrimination. It doesn't say anything about intent. It says you can't be fired because you opposed discrimination. In most cases, in the vast majority of cases, intent is relevant because you have- Is filing the report, so to speak, all that's necessary to gain protection under the statute as you see it? It is, but I want to be clear, we're not advocating, you know, if she had lied, which she did not, I think that's why this case is so unusual, established as a matter of fact that she did not lie. But if she lied, we're not- I want to be clear, we're not arguing that she couldn't be dismissed if she had told an untruth. I guess our view is that that triggers the protection, but the company, her report triggers the protection, but the company could still have dismissed her if it had conducted a reasonable investigation. And under our alternative rule, even if that investigation had been a mistake, but our point here is that they did not conduct a reasonable investigation. Thank you. Thank you. Ms. Crawford? May it please the Court, Sarah Crawford for the U.S. Equal Employment Opportunity Commission. The appellant's Title VII retaliation claim should go to a jury given disputed issues of fact as to the adequacy of CAVA's investigation and the facts on which CAVA relied. A reasonable jury could conclude that CAVA's actions in firing VIA, a supervisor who honestly and properly reported allegations of harassment, would dissuade a reasonable worker from engaging in protected activity. Even if they stipulated there's no discriminatory animals? We could see that there is a stipulation that the employer had an honest belief that VIA had fabricated the allegations. However, EEOC takes issue with the fact that CAVA did not conduct an adequate investigation to get to that point. The issue in this case is causation, correct? Correct. And so you have this unusual circumstance. The plaintiff can plead the case however they want to. They've chosen not to follow the McDonnell-Douglas route. The burden of reluctance on them in the first instance to show causation. And so they have stipulated this fact. So, I'm not trying to second-guess what they did, but they did what they did. So, I'll ask you the same question that I asked the plaintiff's counsel, is how do you prove causation in that circumstance? Well, EEOC's position is that causation doesn't require a malicious intent. The causation requires... What about a non-malicious intent? How do you get around the stipulation? The issue here is that the employer did not follow the required reasonable care, didn't take the reasonable care required by precedent set in Berger-Ellerith by this circuit in the Ocaltree case where there was not a policy in place and the Fourth Circuit ruled that that was negligent on the part of the employer. Here, you had... Well, it is the EEOC's position that animus is simply that the employer acted because of the protected activity. And here, there's no question that Vea would not have been fired but for honestly and properly reporting these allegations of harassment. And EEOC is particularly concerned with the danger of upholding the rule set by the district court. How many cases are you going to have where they choose to go the direct evidence route and they make a stipulation like this? Well, I would... I suspect not very many. I would agree that this may be an unusual case in part because you have a plaintiff here who did everything right and we have an admission down the road that it was Bonilla who actually had lied when asked whether she had communicated this to her supervisor. So, I do think this is an unusual case but the concern here is larger in that there would clearly be a chilling effect if the rule that is established in this case is that a supervisor who is doing exactly what the law expects her to do, even in the absence of the employer having a policy that makes clear her responsibility, that she may be fired simply because an employer reports they honestly believe... Let's talk in practical terms. Putting aside the Supreme Court said, you know, EEOC, for whatever it wants in its guidelines, we're not worried about those. So, the employer says, yes, go investigate this. So, they go to the first person and she says, oh, no, I never said that. They go to the witness who was supposed to be there and this conversation took place and he says, I never heard anything other than that. I mean, to the average person, that would be fairly conclusive. Well, precedent requires the employer take additional steps. Having a policy providing training in how to conduct an investigation, not involving personal friends of the accused harasser in the investigation can be intimidating. Those are all factors, but do you have a case that says that? Let's see. Well, the Ocaltree case that I cited from the Fourth Circuit certainly makes clear that employers should have a policy that sets out, and Farragher-Ellerith certainly sets out the reasonable care standard for employers to escape liability in which they are to have a policy and also encourage prompt reporting of allegations of harassment. And a rule otherwise here certainly would encourage supervisors to conduct their own investigations before reporting up the chain. Thank you. Good afternoon or good morning, Your Honors. David Barmack and I represent the appellees who I will refer to as CABA. Your Honors, what the Nassar case decided by the Supreme Court in 2013, informed by this Court's decision in Foster and in Archer, made clear is that to prevail on a Title VII retaliation claim, Ms. Villa had to show that retaliatory animus was the animating force behind her termination. She lost her case because she admitted that the animating force behind CABA's decision to terminate her employment was not just that she had made a complaint about harassment, but rather it was CABA's conclusion that she had fabricated that complaint that she made. That conclusion, she admitted, was based on CABA's interviews of three individuals who were in a position to know, and Judge Agee, you have referred to them in your questions. The record shows unequivocally that Judith Bonilla denied that she was propositioned by Mr. Boutron and further denied that she ever told Villa that she had been propositioned. Jessica Arias, another one allegedly harassed, denied that she was propositioned by Boutron and said that whoever said that she had been was lying. Osmer Marinero, who supposedly was present when Bonilla told Villa that she had been harassed or propositioned by Boutron, also denied knowing anything about it. Faced with this evidence, based on this investigation, and I'll address the investigation, CABA is not embarrassed about its investigation and doesn't feel that it was inadequate in any way. But based on this investigation and this evidence from these three witnesses with whom they spoke, CABA concluded that she had made up the allegations. And as a result of that, not as a result of filing her complaint, it decided to terminate her employment for fabricating the report about Mr. Boutron. As Judge Agee alluded to, in this case, Ms. Villa admitted to those facts. That's the record that the district court had before it. She admitted to all of that. It was set forth in Statement of Fact Number 43 in the summary judgment briefing, and it was admitted to by her, it's at Joint Appendix, page 189. She could have taken other approaches. She could have taken the position that CABA's professed conclusion that she had been terminated for fabricating was just that, was professed, but that, in fact, there was some unlawful motive at work, that it just wanted to fire her because she had filed the complaint at all. But she didn't do that, and she came forward with no evidence, zero evidence that CABA had any reason for terminating her other than its conclusion that she had fabricated her report. This leaves Villa in the losing position of arguing either there was some other but-for cause, and you've heard Mr. Kaplan allude to that by talking about other causes, multiple causes, or that terminating an employee for fabricating a report of harassment is unlawful simply because, to Judge Motz's point, the fabrication of the report is somehow so inextricably intertwined with filing the report itself that the employer's hands are tied, and they just can't ever- No, no, no. All this does is make it protected activity. And the inextricably bound language is Judge Wilkinson's in a Title VII case. But- So it's not just good old Judge Motz. And I didn't mean to suggest that, Your Honor. I was just alluding to the fact that you had raised that point during the argument, not that it was unique to you. So how about addressing that point? Well, what the case law talks about in talking in the context of but-for causation is what you look at is what is the animating reason for the termination. And when you look at the animating reason for the termination here, it was not the filing of the report. They didn't fire her when she made the report. They only fired her when they concluded after an investigation that she had fabricated the report. But there wouldn't have been any investigation of it if she hadn't reported. I can't really see how it can be pulled apart. And you think that her response to your undisputed facts does that? Is that what you're saying to us? Yes. To pull some apart? Tell me where that is. You've been relying on this. Where is it in the record? Can you give me a record? Oh, yes. I'm sorry. It's at Joint Appendix 186. I'm sorry. Joint Appendix 189 is where she agrees to the statement. Okay. So what's she agreeing to? That's at Joint Appendix, the bottom of 32 to the top of 33. It's the statement of fact read by Judge Agee. And I'm sorry, what's the damaging thing that you – what is damaging about that? She admits that the reason for the termination was Cava's conclusion. We're looking at paragraphs 43 and 44? Yes. Is that what you're looking at? It's since they denied, he concluded. Is that what you're relying on? I just want to – I believe so, Your Honor. I just want to get it in front of me so I'm not scaring you wrong. Yes. Paragraph 43, Your Honor. Okay. I understand your argument. While you're interrupted, let me ask you this. Yes, Your Honor. When you talk about the animating reason that your client had, is it that he is effectively exonerated for any wrongdoing because it's an honest belief or a reasonable belief or an honest belief that is reasonable or some other formulation? What is it that provides the immunity? It's an excellent question and this is probably the wrong case to frame that question as well as another approach to the case might have done. So if – and I think that probably the case could have been litigated in a fashion that made both of those things factors. One could have said, for example, that a belief that's just from – you know, I woke up one morning and I decided that she had fabricated the report, not based on any investigation, not reasonable in any sense, would not pass muster. Simply not what we're faced with here. And again, they could have litigated the case differently and perhaps gotten a different result at summary judgment. I'm not sure they would have, but perhaps so. Here, I think what is clear is that Kava's belief was both sincerely held, as they acknowledge, and also reasonable based on the investigation that they had done. So here, in effect, what she argues is that having engaged in the protected activity of filing her report, she was, in effect, shielded from termination, even though Kava concluded that the report was fabricated. In effect, we submit, she wants to read out of the statute and of the law the concept of retaliatory animus. And if we know one thing from the Supreme Court's decision in Nassar in 2013, retaliatory animus is the linchpin of a retaliation case. There must be retaliatory animus. And this court has recognized that and the import of Nassar in many decisions, including Foster and the Archer case. And what you have to look at is what, in fact, was the animating reason that caused Kava to take the action that it took. And when you look at that in this case, she admits that the animating reason was the fabrication of the report. So the court would have to conclude that fabrication of the report was an unlawful basis for terminating her. It would have to conclude that an employer could not terminate an employee for fabricating a report. And there is no case that I'm aware of anywhere that has held any such thing. Certainly the total system services case in the 11th Circuit squarely holds the opposite. That case is very similar to this on the facts in many respects, albeit without the stipulation that we have. So in some sense the facts were even weaker. And the court held that there was no retaliatory animus and that the employer was within its rights to terminate the employee for having fabricated a report. And in that case, the court, in fact, recognized that there's a difference in terminating an employee for fabricating a report versus merely making a report. Where this leaves Via, I think, is arguing, in effect, that fabricating her complaint was itself some sort of protection. It was a protected activity and that Kava's hands were, in fact, tied and Kava could not terminate her employment. Like I said, there is no legal support, and they've cited none, that supports that perspective. In fact, when circumstances, as total systems said, when circumstances give the employer good reason to believe that the fictitious version was the result of a knowingly false statement. By an employee, the law will not protect the employer's job. And that's the case here. It determined that she had fabricated the report, her job was not protected. And as total systems says, you don't, the court is not in the business of reviewing and parsing every step the employer took and reassessing and reexamining its good faith business judgment. That rule in total systems services is entirely in accord with a long line of cases in this court, beginning at least with Desjarnet about 20 years ago, more recently in the case of Walker v. Mott Holmes, where the court here has recognized that it is not a super personnel agency that is in the business of reviewing the staff and other decisions of the company. Here, furthermore, I would submit that in fact, although I don't think the court reaches this issue, that in fact, CAVA did conduct an investigation that was appropriate and reasonable. Perfect? Probably not. I've been practicing employment law for 40 years. I haven't seen a perfect investigation yet. You don't think we would be required to look beyond the stipulation to determine if the decision that it was fabrication was reasonable? I think actually in this case, not, Your Honor, because I think of the way that they proceeded with their case, I think it was incumbent upon them in effect to say in response to that, that statement of fact, as they did in other instances for other statements of fact, that the statement of fact is misleading, because although CAVA may have concluded that in some sense, its conclusion was unreasonable and not well-evaluated. Yes, I think that's right. But in any event, I think it ends up not mattering, because when you look at, and there was record evidence, substantial record evidence of what the investigation was, and they interviewed three people. They talked to three employees who, via herself, had identified as the three people in the best position to know if they had been propositioned. They didn't interview the person that supposedly propositioned, right? They did not. They did not. They did talk to the people who, and typically in my experience, this is the way investigations proceed. They start with the people that supposedly were victimized. This is really important to me. I'm sorry to interrupt you. But I really don't understand how your clients' reliance on the lie can not be intertwined with the fact that the report was given. If there's no report, there's no firing. Right? And the reporting it is protected activity. You can see that. The report, yes. The report is there. Yes, of course, if you're recounting what happened here. She reported. They made some sort of investigation. As a result of that investigation, they fired her. So we have the three elements. And what you say is, oh, no, no, we didn't fire her because she made the report. We fired her because we thought she was lying about the report. But they never would have had any ability to think she'd committed a lie if she hadn't made the report. Correct, but that's the whole point. But we're trying to encourage. She's a supervisor of some sort. We're trying to just sort of put you back in this situation. Somebody reports to her. She doesn't know whether it's true or not. She doesn't report it. She may get in trouble with her higher-ups because after all this is a Title 70 case and you're supposed to go up the chain and tell people what's happened. So she does report it. You make some kind of investigation. And maybe it's good, maybe it's bad, but I don't understand how that your investigation and your determination that it was not true, particularly when we later find out it was true, that that breaks the chain of what caused it. It was the report, the protected activity. Let me first say that we don't concede that in fact the report, for summary judgment we conceded. Okay, but we're here on summary judgment. Her purpose is here. But as Mr. Kaplan pointed out, her phone call was a cause. Her report, the fact that she was employed, there would not have been a report had she not been employed. So there are any number of causes, but the whole point of but for causation is that you have to single out, and this is a big change under Nassar, so there's no But Nassar, that's the problem. Nassar involved two entirely different things. One wasn't inextricably bound with the other. You would agree with me on that? I do, Your Honor, but the point of Nassar was to look at what is the animating reason for the adverse action. If the court concluded that in fact once a report is made, that report is cloaked with this shield of invincibility. No, it's cloaked with being protected activity. And if you fire somebody because of that protected activity, then you've completed that part. Now, your client may have a defense. Of course, but she was not Okay, I'm not sure we're going anywhere, but I just thought it was worthwhile to tell you what my problem was so that you could address it. I understand, and I hear your point. I would just say that in my mind, and I think consistent with the case law, there is a distinction and there traditionally has been between making a report or participating as a witness in an investigation, doing those things, and falsifying or fabricating information. And I think the 11th Circuit decision reflects that dichotomy rather than interfering. I could even understand that if there was evidence here that she had, but you don't claim that she fabricated evidence. You can't claim that, because in fact it was true. Well, as I say So it might be a different case if we had, if she, for example, was an employee that kept filing these reports or kept passing them on to you and they were all false. Maybe that's a different case. But that's not the situation we have here. Well, we have a situation where the employer reasonably concluded in our view that she had, in fact, and it could only deal with the information it had available to it, which was the three employees saying she had fabricated the report. Well, it didn't examine the person that supposedly did the harassing, right? And they used somebody who was a friend of somebody else's to do the translation. These were all people that didn't speak English very well. I guess I just feel like this maybe is giving the employer a veto. And that can't be what Title VII we want employees, we want supervisors to report reports they have of discrimination. I agree, but if the proper thing in this case and I never get the expression right, bad facts make good law, vice versa, but this is an unusual case, this fact. These facts are very unusual. And we can't, we do want employers to, employees to report, but we also want employers to have the ability to do investigations and to reach conclusions. That's what they're required to do every day. And in this case, based on all the information available to it, it made a conclusion that she had fabricated the report. And she could have handled this issue differently if she wanted to in the litigation below by attacking the employer's conclusion. But she didn't. She admitted that the employer made the conclusion based on what it had found in the investigation. So it's not just good heart, it's not good heart, empty head. It's good heart and informed head. And that's what she agreed to. And to hold an employer to a greater standard does not strike the right balance. If I could have 30 more seconds to finish, Your Honor. The, I urge you to look at Justice Kennedy's in the Nassar case as to why the but-for causation standard is so important and the animating motive is important. It's important, he says, in part because it's the words of the statute require it, but also because there has to be a balance in the courts and in society between the rights of the employee, engaging in protected activity, and the exposure of the employer. And that to not have this important standard of but-for causation would lead to frivolous complaints, inability of employers. Your Honor, I think that clearly the legal, the fundamental central legal issue here is whether we are obligated to show a bad motive, something of that nature on the part of the defendants. We cannot show that. Our contention is we do not need to show that. You know, he mentioned the statute. You've got to follow the statute. The statute says nothing about intent. It says you cannot be discriminated against for opposing a discriminatory action. There's very little case law on this. The reason I think is because the normal way this comes up is the defendant is saying, well, we fired this person for bad performance, which has got nothing to do with her subsequent EEOC complaint. And the plaintiff is trying to prove that, no, no, the real reason was because I made this EEOC complaint. That's in 99 percent of these cases. And in that case, those cases … That's because 99 percent of those cases usually proceed under the McDonnell-Douglas instead of the direct evidence route, and they don't have a stipulation where you say the reason this person was terminated was because of a reason that's not retaliatory animus. That's what makes this case unique. Our contention, Your Honor, is that we do not need to show – this is Forman v. Small said this in the D.C. Circuit – that we do not need to show animus, retaliatory animus, in the sense of a bad motive. What we need to show is that she was fired because she reported discrimination to us. So basically you say that protected activity proves causation. No, I don't think protected activity – I don't – in a sense, but-for causation, the Supreme Court has said you have but-for causation. One thing is a but-for cause of another if the subsequent event would not have happened but for the first event. I don't think there can be any dispute in this case if she had not made this but-for cause. They seem to be looking for a higher standard, some type of – you know, a court-like. That seems like you have answered the question that I asked you, which is but-for the fact she filed the report. Well, but-for the fact she engaged in protected activity, this wouldn't have happened. Right. So I still think that your argument is because there's protected activity that I don't think the employer necessarily disagrees with. That proves my causation case. Those are two very distinct elements. I-I-I would disagree with you, Your Honor. If the law is that we need to show Slyander that they acted because of a bad motive, then we do not have causation. If we have to prove that, or we cannot prove that. What you'd have to prove is that they fired her because she engaged in protected activity. Well, that's what the statute requires. That's what the statute requires. And what they say is that you have conceded away that because you conceded that they fired her because they thought that her report was a lie. And therefore, it was not protected activity. So what do you say about that? We don't concede. I understand you don't think you have to prove that they acted badly. I understand that. But what is your argument directly to that? That it was protected activity. About their embroidery or their, what you have conceded that they fired her because they believed it was a lie. You say the two are together. It's still protected activity. Is that what you say? It's still protected activity. I don't see how it becomes unprotected activity because it was protected activity the moment she made the report. I don't see how it can become unprotected. Let me ask you this hypothetical. It's not this case. A woman goes to her employer and says, the co-employee A is sexually harassing me. The employer investigates it. He goes back to her after talking to everybody and he says, I've investigated this. Nobody substantiates what you say. I don't believe it's true. She says, I know it's not true. I just wanted to get the guy in trouble. And he says, you're fired. In your view, he can't do that. No, no, no. It's protected activity. But we're not arguing that protection is absolute. One of the rules we propose is that if a reasonable investigation is conducted, they're free to fire the person. But I was the first position to be it didn't matter. Well, the first position, no, the first position would be if it was false, they could fire. And if you're saying that she admitted it was false, I want to be very clear about that. We're not saying, we're not advocating for a rule that someone makes an EEOC complaint. I was confused about what your position was. Our first position is that the truth matters and that's the definitive issue. But let me emphasize what I think is really a key point here, is that if we adopt what I understand the defendants, the appellees to be arguing, no one is ever, no reasonable person is ever going to come forward and make a report of sexual harassment, at least if it involves someone else that they're not personally affected by it. Because they know that the company has absolute unreviewable discretion to decide you're lying. We're not firing you because of your report. We're firing you because you're lying. And how in this case is very unusual because we know she was not lying. But in a normal case, I think it would be almost make people realize that. There was no way they could prove that. On a normal case, they're not going to stipulate that the employer acted with a non-retaliatory animus. I think in most cases the defendant, the plaintiff would not be able to prove retaliatory animus. Let me just mention one thing about the fact that Jessica Arias, I mean he keeps going back to the fact that they interviewed three people, one of whom was Jessica Arias. And Jessica Arias' testimony was not in accord with what my client had reported. That's simply not true. My client had said, well, you know, this is happening, and she told me this, and it seems kind of strange, maybe there's some kind of relationship with Jessica Arias and the person who allegedly did the sexual harassing. And she said explicitly, I don't know, I'm not sure if that's true. Nothing that Jessica Arias said is inconsistent with what my client said. Thank you very much. We will come down and greet the lawyers and then ask questions.
judges: Diana Gribbon Motz, William B. Traxler Jr., G. Steven Agee